DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas which found for appellee on its action for breach of a written contract and for appellant as to appellee's action for breach of an oral agreement. For the reasons that follow, this court affirms the judgment of the trial court.
 {¶ 2} Appellant Earl Domer sets forth the following assignments of error:
 {¶ 3} "Assignment of Error Number One
 {¶ 4} "The lower Court erred in failing to apply the doctrines of res judicata and/or collateral estoppel on the purchase of a truck where a seller signed a Federal Court Agreement in a forfeiture proceeding pursuant to21 U.S.C. § 853(n) admitting that one individual purchased a truck and forfeiting its rights thereto as titled owner, then subsequently brings a claim against a different individual as purchaser.
 {¶ 5} "Assignment of Error Number Two
 {¶ 6} "The lower Court erred by failing to find a failure to mitigate damages where a seller had an opportunity to claim its truck in a forfeiture proceeding brought under 21 U.S.C. § 853, but forfeited its truck.
 {¶ 7} "Assignment of Error Number Three
 {¶ 8} "The lower Court's judgment against Mr. Domer, finding that Guy Trucking was owner of the Truck and that Guy Trucking established recoverable damages against Mr. Domer, was against the weight of the evidence.
 {¶ 9} "Assignment of Error Number Four
 {¶ 10} "The lower Court abused its discretion by setting a Summary Judgment cutoff date nearly two months before the discovery deadline, then refusing Mr. Domer leave to file a Motion for Summary Judgment where it is uncontested that Guy Trucking withheld documents Mr. Domer requested in discovery."
 {¶ 11} The undisputed facts that are relevant to the issues raised on appeal are as follows. On August 1, 2001, appellant Earl Domer; Clyde Baer (Domer's brother-in-law), and a third man went to Guy Trucking, Inc. to look at a truck that was for sale. The men were interested in a 1997 Western Star truck, which appellant took for a test drive. That same day, appellant signed a lease/purchase agreement for the truck with a stated purchase price of $40,000. The agreement required a $30,000 deposit with the remaining $10,000 due on or before September 29, 2001. Arrangements also were made for the lease of a trailer for the truck but that agreement was not put in writing. The following day, August 2, 2001, Baer returned with the $30,000 deposit for the truck and left with the truck and a trailer. On August 13, 2001, the truck and trailer were seized by the United States Government as a result of Clyde Baer's arrest on drug charges. The truck was forfeited but the trailer was returned to appellee.
 {¶ 12} On August 19, 2002, appellee filed a complaint seeking to recover $10,000 it claimed Earl Domer still owed pursuant to the lease/purchase agreement for the truck, along with late fees and interest. Appellee asserted that appellant was the purchaser of the truck and therefore liable for the $10,000 that remained unpaid. Appellee also sought recovery from appellant on the claimed oral lease for the trailer, alleging appellant owed 31 weeks rent at $250 per week. The case came to trial before the court on July 8, 2003, and the following evidence was presented.
 {¶ 13} Appellant identified the lease agreement between Guy Trucking, Inc. and himself which he signed on August 1, 2001. Appellant stated that he never read the agreement, which he said was between appellee and Baer. Appellant testified that the three men originally went to Guy Trucking because Baer was looking for a truck for his girlfriend's father. Appellant denied having any discussions with Steve Guy, owner of Guy Trucking, Inc., regarding the purchase of the truck and further testified that he test-drove the truck while Baer and appellee discussed the price. Appellant stated that he was aware of the purchase price but did not know any other details. He testified as to his belief that Baer made the deal and ought to be responsible for all money owed under the agreement. He stated that he never intended to be the purchaser or lessor of the truck. Appellant further testified that he did not know why Baer did not want the truck title in his name, and agreed that there was no written contract between Baer and anyone else regarding the purchase of the truck. Appellant testified that he was not present when the $30,000 was paid to appellee. He further testified as to his understanding that the title would be transferred out of his name at a later time. Appellant stated that he never talked to appellee about purchasing a trailer. He also testified that he never had possession of the truck and never gave appellee any money for it.
 {¶ 14} Steve Guy testified that he is the owner of appellee Guy Trucking, Inc. He stated that appellant had called him inquiring about the truck and agreed to come out the following day to look at it. Guy testified that on August 1, 2001, appellant brought Baer and another man with him. Guy spoke to appellant alone about the asking price and appellant then said he wanted to talk to Baer about it. Appellant and Baer spoke privately and appellant then told Guy that they would buy the truck for $40,000 and that the truck would be titled in appellant's name. Guy further testified that Baer delivered the $30,000 to him on August 2, 2001, but that he never received the remaining $10,000. He stated that within a few hours of purchasing the truck appellant asked him if he had a trailer they could use on a short-term basis with the truck. Guy told appellant he had one he would lease for $250 per week. Appellant spoke to Baer and then told Guy they would take the trailer. Guy testified that the agreement to lease the trailer was not in writing. He also testified that he did not get the truck back after it was seized but that the trailer was eventually returned to him. He is now asking for 31 weeks rent on the trailer to cover the time between when it was leased and when it was returned to him by the federal government. Guy testified that it was not his understanding that Baer was purchasing the truck or that appellant was acting as a middle-man for purposes of the transaction. Guy further testified that when he gave possession of the truck to Baer on August 2, 2001, appellant was not there but that appellant had authorized him earlier that day to let Baer take the truck.
 {¶ 15} Betty Domer, appellant's wife, testified that her brother, Clyde Baer, asked her whether if he purchased a truck he could put the title in appellant's name. Her understanding was that Baer did not want his wife to find out he was buying the truck because it was intended to be for his girlfriend's father.
 {¶ 16} Gary Pyle testified that he was working for appellee as a driver on August 1, 2001, when appellant arrived to look at the truck. He stated that he saw appellant, Baer, and another man but did not witness any conversations regarding the sale or lease of the truck. Pyle testified that later that day he observed Baer give Guy money for the truck. He testified that he saw Guy and Baer discussing the trailer rental but did not hear any of the conversation between the two men.
 {¶ 17} On September 22, 2003, the trial court filed its judgment entry on the matter. As to appellee's first claim for breach of contract, the trial court found that appellant was personally liable for the remaining $10,000 on the contract for the purchase of the truck. The trial court rejected appellant's argument that he was not personally liable on the contract because he was acting as Baer's agent and that Guy was aware of the relationship. The trial court found that there was no evidence to suggest that Guy knew or should have known of an agency relationship. The trial court based its finding on testimony that appellant test drove the truck, instructed that the truck be titled in his name, negotiated the sale price, and most telling, signed the sales contract. The trial court noted that the contract contains no indication that appellant was signing as Baer's agent. As to appellee's claim for breach of the oral contract for the rental of the trailer, the trial court found that appellee had failed to demonstrate the existence of such a contract between appellee and appellant and entered judgment for appellant on that cause of action. The court noted that Pyle had testified that he observed negotiations regarding the trailer taking place between Guy and Baer and that appellant was not on the premises when those negotiations were occurring. It is from that judgment that appellant appeals.
 {¶ 18} In his first assignment of error, appellant asserts that appellee's claim against him is barred by the doctrine of res judicata. Appellant argues that the trial court should have applied the doctrine of res judicata to appellee's claim for the money owing on the truck, because appellee signed a federal court agreement in the forfeiture proceeding admitting that Baer purchased the truck and forfeiting its rights as titled owner of the truck.
 {¶ 19} The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (known as collateral estoppel). With regard to the claim preclusion element of res judicata, the Supreme Court of Ohio has stated: "A final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction * * * is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them." Norwood v. McDonald (1943),142 Ohio St. 299, paragraph one of the syllabus.
 {¶ 20} Appellant appears to argue that the federal forfeiture action that resulted in the truck and trailer being seized constituted a valid, final judgment, and that appellee's suit to recover money owed for the truck and trailer raised issues that either were or might have been litigated in that prior suit. We note initially that the trial court record in this case contains no documentation of the federal action for the lower court to have considered. While it was not disputed that Baer was arrested on federal drug charges and that the government seized the truck and trailer, the only evidence of that action is a copy of the agreement, signed by appellee and the assistant U.S. attorney, wherein appellee consented to the forfeiture of the truck, and the United States agreed to return the trailer. The agreement was admitted in evidence as a defense exhibit in this case. While the agreement indicates a case number in the United States District Court for the Northern District of Ohio, Eastern Division, it is not file-stamped or dated. Appellant has not shown that there was a prior case that involved the same claim or cause of action between these parties. There was no basis for the trial court in this case to apply the doctrine of res judicata and, accordingly, this assignment of error is not well-taken.
 {¶ 21} In his second assignment of error, appellant asserts that the trial court erred by not finding that appellee failed to mitigate its damages by reclaiming the truck after it was seized. Appellant argues that if appellee had asserted its rights as owner of the truck it would not have to pursue appellant for the remaining $10,000. Appellant assumes, however, that since appellee was able to reclaim the trailer it could also have reclaimed the truck. There is no evidence to support that assumption. The only evidence relating to this issue is the copy of the agreement referenced above, which states: "Steven E. Guy consents to the forfeiture of the following property, and will not contest its forfeiture pursuant to 21 U.S.C. § 853(n): 1997 Western Star 49E Semi Tractor, * * *." As to the trailer, the agreement states: "The United States agrees to return the following property to Steven E. Guy [Guy Trucking, Inc.]: 1997 Stoughton Platform Trailer, * * *." Despite the absence of any evidence in support of his argument, appellant approaches this issue with the assumption that appellee chose not to reclaim the truck. There is no evidence in the record, however, that appellee had the option of reclaiming the truck and nothing to shed light on why this particular agreement was reached. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 22} In his third assignment of error, appellant asserts that the trial court's judgment in favor of appellee was against the weight of the evidence. Appellant argues that the evidence did not support a finding that appellee had title to the truck. Further, appellant asserts that appellee did not meet its burden of proof as to the $10,000 damages it claimed. Again, appellant asserts that appellee could have reclaimed the $40,000 truck and mitigated his damages. Appellant also argues that the trial court's findings that he purchased the truck and Baer rented the trailer were inconsistent with each other.
 {¶ 23} The greater weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. When evaluating whether a judgment is against the manifest weight of the evidence in a civil action, the court uses virtually the same standard of review as in the criminal context. In re Washington
(2001), 143 Ohio App.3d 576. In In re M.M., Cuyahoga App. No. 79947, 2002 Ohio 472, the court explained that "[i]n civil cases, we review a manifest weight challenge to determine whether some competent, credible evidence supports the judgment." Our role, therefore, is to determine whether there was relevant, competent and credible evidence in this case upon which the trial court could find that appellant was liable for the $10,000 that was owing on the contract to purchase the truck from appellee.
 {¶ 24} Under Ohio's Uniform Commercial Code, a "buyer" is "a person who buys or contracts to buy goods." R.C. 1302.01(A)(1). A "seller" is "a person who sells or contracts to sell goods." R.C. 1302.01(A)(4). "Goods" are all things, including specially manufactured goods, that are "moveable at the time of identification to the contract for sale * * *." R.C. 1302.65(A) provides that a buyer must pay the contract rate for goods accepted. The evidence that was before the trial court clearly indicates that, under the definitions set forth above, appellant was the buyer of the truck, appellee was the seller, and the truck which is the subject of this litigation constituted the goods identified in the purchase contract. Pursuant to R.C. §1302.14, "[t]he obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract." The trial court in this case has had the opportunity to view the witnesses and evaluate their demeanor. See In re Awkal (1994), 95 Ohio App.3d 309, 316. We have thoroughly reviewed the evidence in this case and find that there was relevant, competent and credible evidence upon which the trial court could base its finding that appellant was liable on the breach of contract for the sale of the truck. Based on the testimony of appellant and appellee, the trial court found that appellant test drove the truck, instructed that the truck be titled in his name, negotiated a price for the truck, and signed the purchase agreement. Despite appellant's testimony that he never intended to be the purchaser of the truck, he testified that he agreed to have it titled in his name and identified his signature on the purchase agreement. Appellant's signature appears on two documents: the "Equipment Lease/Purchase Agreement," which identifies the truck and sets forth a price of $40,000; and a "Lease Agreement," which appellant signed twice, indicating that he had the appropriate insurance and identifying himself as "Contractor-Lessor." Further, there is no evidence that appellant was acting as Baer's agent for purposes of purchasing the truck. Appellant is not identified as Baer's agent on any of the documents relating to the purchase and Steven Guy testified that he was never told that appellant was acting on Baer's behalf or that Baer was the individual actually purchasing the truck.
 {¶ 25} Upon consideration of the foregoing, we find that the trial court did not err by finding that appellant failed to pay in accordance with the contract which he signed and that he is liable for the $10,000 remaining to be paid under the agreement. Appellant asserts that appellee's "only evidence" as to damages was that there remained $10,000 due and owing under the lease/purchase agreement at the time of Baer's arrest. Such evidence is clearly sufficient to support the trial court's finding that appellee is entitled to that amount, plus late fees and interest, pursuant to the terms of the agreement which appellant signed. Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 26} In his fourth assignment of error, appellant asserts that the trial court abused its discretion by setting a summary judgment cutoff date that was nearly two months before the discovery deadline and then denying appellant's motion for leave to file a motion for summary judgment after the cutoff date. Appellant claims that appellee withheld documents he had requested in discovery but does not identify the documents. The record indicates that on December 24, 2002, the trial court set a summary judgment cutoff date of March 31, 2003, and a discovery deadline of May 13, 2003. At a pretrial held June 9, 2003 on appellant's motion to compel, the trial court found that certain documents as requested by appellant were already in his counsel's possession, that those documents would be deemed produced by appellee, and that appellee had no documents other than those already attached to appellant's memorandum in opposition to appellee's motion for summary judgment.
 {¶ 27} As to the pretrial schedule, appellant was notified of the March 31, 2003 summary judgment cutoff date in December 2002. Recognizing the trial court's special expertise and familiarity with case management issues and the court's discretion to manage its own docket, we find that the court did not abuse its discretion by setting the schedule as it did and denying appellant's request for leave to file summary judgment after the cutoff date. Further, appellant does not dispute that he had possession of copies of the documents by the time he responded to appellee's motion for summary judgment. Based on the foregoing, appellant's fourth assignment of error is not well-taken.
 {¶ 28} On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Knepper, J., Lanzinger, J. and Singer, J., Concur.